UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 20cr10197-LTS |
| | ) | |
| JOSHUA TEIXEIRA, et al, | ) | |

**MEMORANDUM REGARDING DECLINATION TO PRODUCE WITNESS INFORMATION AT THIS TIME**

As discussed at the prior status conference, the government has notified counsel for the defendants that it declines to produce evidence concerning potential witnesses in this case at this time based on potential witness intimidation and obstruction of justice. This case involves a racketeering prosecution against various members/associates of NOB, a highly dangerous criminal organization that has been involved in a myriad of violent crimes, including murder, attempted murder, and assault and battery with a dangerous weapon. Members/associates of the gang (including multiple defendants) have also been involved in various acts of witness intimidation and obstruction of justice, which occurred both before the institution of this criminal case and after the institution of this criminal case. The established pattern of witness intimidation and obstruction places any identified witnesses at risk. The government has raised with representatives of the defense counsel meeting to discuss a possible schedule for subsequent disclosure of witness information and the use of security measures (such as a protective order) to facilitate disclosure. As of the present date, there has been no meet and confer on this topic with defense counsel.

1

Absent proper security measures in place to protect witnesses, the government should not be required to disclose information concerning potential witness at this time as the disclosure would subject witnesses to being targeted by NOB members/associates.

I. **THE GANG'S OBSTRUCTION OF JUSTICE AND WITNESS TAMPERING**

Investigators have recovered evidence of NOB members/associates identifying potential witnesses against gang members/associates and (as set forth below) engaging in witness intimidation and obstruction of justice.  As examples of NOB members/associates identifying potential cooperators:

1. In early 2017, police recovered a mobile phone that was subsequently associated with NOB member Darius Bass (the phone was seized pursuant to an investigation of the attempted murder of a rival street gang member in Randolph, MA and evidence implicates Bass in the shooting).  Investigators subsequently found a photo image (saved on the phone) which depicted the first page of a Boston Police Department report involving a statement made by an individual to the police.  The copied report has a handwritten note on it identifying the street name of the person who provided the information to the police.  This photo image in Bass' phone is consistent with the gang sharing information on individuals who are cooperating with law enforcement.

2. Investigators have also identified multiple jail calls in which NOB members/associates discuss individuals whom they believe are cooperating with law enforcement, thus further establishing the gang's pattern of investigating and identifying potential cooperators against the gang.

This evidence of NOB members/associates identifying possible law enforcement cooperators must be viewed in light of the pattern of intimidation and obstruction that can be seen in the actions discussed below.

### A. Witness Intimidation/Tampering Targeting Victim of Gang-Related Armed Robbery

On or about October 8, 2017, a victim (identified as an associate of the Cameron street gang, one of the NOB's primary rival gangs) was the target of an armed robbery and beating by NOB gang members Joseph "J-Money" Gomes (Gomes is presently a defendant in this case) and Malik "Mook" Hobson in a MBTA station.  *See* Complaint at ¶¶ 23-25.   Both Gomes and Hobson eventually pled guilty to state criminal charges arising out of the armed robbery and received sentences of incarceration.

Investigators recovered videos of the robbery victim being openly intimidated and coerced *in a state courthouse* by defendants Kelvin "Kal" Barros and Wilson "Dub" Goncalves-Mendes from a phone used by Goncalves-Mendes.   The videos were recovered, pursuant to a federal search warrant, from Goncalves-Mendes' phone seized on or about June 16, 2020.   The videos were filed under seal with the District Court.   Though Defendant Barros and Goncalves-Mendes are off-camera during the intimidation, investigators familiar with Barros' voice have identified that Barros was involved in the threats.   In addition, investigators recovered a recorded jail call from on or about May 3, 2020 (discussed in more detail below) between leading NOB members and defendants Joshua Teixeira and Ricky Pina in which they confirmed that the individuals intimidating the witness were "Kal [Barros' street name] and Dub [Goncalves-Mendes' street name]."   During the witness intimidation/tampering, Barros and Goncalves repeatedly press the victim as to whether the victim is "on that Cam sh*t" –i.e.,

3

whether the individual is associated with the Cameron Street gang, one of NOB's primary rivals. They also expressly instruct the victim that "you go to show up to Court and say you're not telling." This is clear witness intimidation/tampering in which Barros and Goncalves-Mendes seek to protect other NOB members/associates against prosecution by threatening a victim/witness to NOB crimes.

### B. May 2020 Video Threatening the Victim of the Gang-Related Armed Robbery

As noted in the Detention Order, on or about May 1, 2020, a gang-related rap video (involving multiple NOB gang members and associates, including defendants Kelvin Barros, Michael "G-Fredo" Brandao, Joseph Gomes, and Darius Bass), titled *Dead Opps, Pt. 3*, was publicly released. *See* Detention Order at pp. 4-5. The primary rappers in the video are Barros and Brandao. The rap video includes imbedded video of the above-referenced intimidation of the robbery victim. The imbedded video has no audio and the image of the victim's face is obscured. Brandao uses the imbedded video to again threaten the armed robbery victim with violence. *See* Detention Order at pp. 4-5. As discussed in the previous section, on May 3, 2020, NOB members/defendants Joshua Teixeira and Ricky Pina discussed the threat in a recorded jail call. Teixeira describes the rap video to Pina as follows:

> Kal [Barros] was like, "Bitch boy you put all them shots in my whip but your man got got in the whip." And then Fredo's [Brandao's] next verse is like **"Snitch boy you told on J-Money [Gomes] and Mook [Hobson] so when I catch you it's lit."** So in the video like, they got Joey [Gomes], they split the screen when he said that on the video and on the right side you see. **Remember that video when n****s ran down on [the victim of the armed robbery] at court, Kal and Dub, and they recorded him when he had that little dress shirt on**? [emphasis added].

Thus, Texeira and Pina confirm that Barros and Goncalves-Mendes committed gang-related witness intimidation/obstruction of justice when they targeted and threatened the robbery victim

4

in a state courthouse. The imbedding of the video, along with Brandao's express threat against the victim, was a public pronouncement by NOB that the gang will retaliate against any potential witnesses to the gang's crimes. This public threat against a NOB victim/witness was made in May 2020 – less than two months before the arrests in this case.

    C. **Defendant Barros' Video Threatening Witnesses**

As noted in prior pleadings, on or about June 24, 2020, the video *RICO* was publicly released. The video is split into two parts. The first part of the video runs through approximately 2:02 minutes and includes television news clips of the arrests of Barros' NOB co-defendants on June 16, 2020. After the first part, the screen goes blank for a brief period and then there is a shorter section of the video which includes the ending verse with a threat to potential witnesses:

> Get the pack from the plug
> Got it flippin', movin' fast
> If them coppers get behind you, they might kill you, do the dash
> And it's crazy if they catch you with that shit then it's your ass
> But what you know about selling fentanyl, ten to one bro, do the math
>
> I ain't worried about no beef
> Cuz they know the time we [are] on
> Spin their block and bust a U-ie, then I tell bro, "reload"
> *I'm worried about the feds, cuz they're hittin' us with the RICO*
> *I'm worried about them n****s that ain't gonna stick to the G Code*

The second, shorter section of the video establishes that Barros is aware that he has been charged with federal RICO charges ("*I'm worried about the feds, cuz they're hittin' us with the RICO*"), and that he is concerned that individuals will talk (people *"ain't gonna stick to the G Code."*). The second part also includes images of Barros holding his finger over his lips in a common sign for staying silent. In addition to Barros openly instructing potential witnesses to stay quiet,

Barros touts the violent nature of NOB in the video, thus clearly backing his intimidation with potential violence by other gang members/associates – similar to the May 1st NOB video.

Defendant Barros has contended that the video was made in May 2020 before the RICO arrests, and that he had no knowledge of, or involvement in, its release. There is no dispute that the federal RICO charge against Defendant and his cohorts was not publicly disclosed until June 16, 2020, the date of the initial arrests in this case. Defendant has represented that he did not learn about the RICO case *until* the date of the arrests. The lyrics of the ending verse (which state that Defendant was "hit[] with the RICO") could not have been recorded before June 16, 2020 – the earliest date that Barros could have been made aware of the charges. Thus, the full *RICO* recording and video could not have been finished in May 2020 because no one involved with Barros knew about the federal RICO case against him and his associates at that time. The first part of the recording and video (the part without the witness threats) may have been finished in May 2020, but the second part with the reference to the federal RICO charges and the "G Code" could not have been.

>   D. **Barros and Mann Conspire to Obstruct Justice in August 2020 *After* the Obstruction/Witness Tampering in the *RICO* Video Was Raised Before This Court During Barros' Detention Proceedings**

On August 4, 2020, NOB associate Christopher Mann facilitated a three-way call between Kelvin Barros and Michal Brandao, who were and are incarcerated in different facilities. Mann is associated with several of the defendants (including Barros, Brandao and Samael Mathieu), as well as numerous other NOB members/associates. This call occurred ***after*** Barros' witness intimidation/tampering in the *RICO* video was raised before this Court in Barros' detention hearing. In the call, Barros, Mann and Brandao conspired to obstruct justice

6

through perjured testimony designed to shield Brandao from admissions to crimes of violence that he made in publicly-released rap videos.  As set forth in the Complaint, Brandao made numerous inculpatory admissions in videos, including participating in a video which included the reenactment of a shooting murder.  See Complaint at ¶¶ 5(a); 27-28.

In the call, Barros stated to Brandao: "N***a listen, I already told Chris … I already told Chris … ***I already told Chris to tell you what to say, did he tell you what I said***?"  Brandao replied in a confused manner.  Barros then stated: "N***a … all the music that we did, I'm the one that wrote it bro.  You feel what I am saying?"  Brandao started to respond, and was interrupted by Barros: "Yeah they can't n***a … you already know what it is n***a … I'm your ghost writer n***a, they can't say sh*t about that n***a … I do this sh*t for entertainment, you feel what I'm saying?"[1]

Barros was instructing Brandao to lie about the fact that Brandao wrote the inculpatory rap lyrics.  By claiming that Barros "ghost wrote" the rap lyrics, they could then argue that there were no admissions to crimes of violence by Brandao, and that the raps are just illusory – a point that benefits not only Brandao but also Barros and other NOB members/associates.  *Barros' claim that he was Brandao's "ghost writer" is demonstrably false because Barros has admitted that he had no role in Brandao's rap songs/videos in the letter filed with the Court on July 21, 2020*.  [*See* Document No. 81-10.]  On the second page of the letter, Barros expressly states: "The Judge said 'we can't just call/say this is just entertainment.'  Then she brought up the fact that in one of the videos mentioned in the case [a video by Brandao] re-enacts a murder.  *That*

---

[1] If Barros was really the person who wrote all the raps, including Brandao's raps, there would be no need to inform Brandao of that fact.

*was not my video, not my song and I not one of the people doing/participating in any reenactment.  So why am I held accountable for someone elses [sic] video?*  I cannot control other people's actions, I can only control and make decisions on my own actions."  Barros, Brandao and Mann are conspiring to obstruct justice and suborn perjury for the benefit of NOB – consistent with the gang's prior actions as set forth above.  Moreover, Barros is orchestrating the obstruction of justice and using Mann, a NOB associate on the outside, to achieve the obstruction.

The above incidents establish that members/associates of NOB have been and are actively involved in gang-related witness intimidation and obstruction of justice.  This established pattern of identifying and targeting witnesses raises clear security issues.  Therefore, the government's declination to provide prospective witness information at this time is warranted.  As noted above, the government is prepared to meet and confer with defense counsel on this issue, including possible security steps, such as a protective order.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

By:   */s/ Michael Crowley*
        MICHAEL CROWLEY
        Assistant U.S. Attorney

## **CERTIFICATE OF SERVICE**

      I, Michael J. Crowley, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

                                            */s/ Michael J. Crowley*
                                            MICHAEL J. CROWLEY
                                            Assistant U.S. Attorney