UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-CR-10197-LTS |
| | ) | |
| JOSHUA TEIXEIRA | ) | |

**Defendants' Objection To Magistrate Judge's
Entry of Protective Order and Request For Expedited
Review By District Court Judge**

Defendants hereby object, pursuant to Fed. R. Crim. P. 59(a), to paragraph 5 of the Second Protective Order issued in this case by the magistrate judge, Dkt. No. 233 (the "Protective Order"), and request that the court set aside so much of paragraph 5 (the "Witness Interview Bar") as precludes counsel and private investigators from using information in discovery materials to attempt to locate and interview any identified non-law enforcement witnesses.[1] The magistrate judge ordered the government to produce discovery to which the Protective Order applies within 30 days.[2] Although not reflected on the docket, the judge further ordered that 14 days after discovery production, defense counsel would have the opportunity to make a showing to determine the necessity of interviewing the witnesses.

It is unclear what showing the defense will need to make before it can commence with witness interviews, whether the government will have input about the timing, necessity, and scope of such witness interviews, and whether the court will actively supervise which witnesses

---

[1] As stated in the Protective Order, "This prohibition includes interviewing and/or communicating with any person outside of the Defense Team in order to investigate, locate and/or identify the identity of, or information concerning, any individual documented in any documents/disclosures which are marked 'Attorneys' Eyes Only – Second Order.'"

[2] Dkt. No 231. "The court will endorse the Order, and the government will provide the material in question to defendants within thirty days. The court warns defense counsel to be careful to notify defense team members about the protective order and to make sure it is not violated. The court will revisit the terms of the protective order at a hearing on Thursday, May 6, 2021, at 10:30 a.m. by video."

may be interviewed, the subject matter discussed, or the procedures and terms. Such court oversight of the pretrial preparation process in a criminal case is unprecedented.

The insertion of the government and the court into the defense pretrial preparation process to the extent contemplated by the Witness Interview Bar would unlawfully infringe on defendants' constitutional rights to due process and effective assistance of counsel. Even if the court's intrusion was lawful, the Witness Interview Bar is not necessary because the other provisions of the Protective Order are adequate to address the security concerns the government has alleged. Finally, the Witness Interview Bar is entirely unworkable and likely would result in the total inability to investigate and interview government witnesses so long as the bar remains in effect.

For all of those reasons, discussed in detail below, the court should set aside the Witness Interview Bar.

## The Protective Order

After a dialogue between the government and representatives of the defense about the government's professed concern for the safety of its witnesses, counsel for all defendants agreed to broad restrictions on the use of discovery materials that contained the names of government witnesses. With respect to all discovery marked "For Attorneys' Eyes Only," defendants agreed:

- to limit distribution to members of the "Defense Team," which includes investigators, who have signed a written agreement to the terms of the Protective Order;

- to use the discovery solely and exclusively in connection with the litigation and trial of this case; and

- not to disclose in any way, *including verbally*, to any defendant without court approval.

*See* Protective Order at ¶¶ 1-4 (emphasis supplied).

In counsel's collective experience, those provisions mark the outer boundary of the most restrictive protective orders entered in this court and in the courts of the Commonwealth where witness safety is a valid concern. *See* Affidavit of Counsel, submitted concurrently with this pleading, at ¶2. Unlike the provisions above, to which defendants have agreed, protective orders frequently permit the defense team to share with the defendant the names of government witnesses and the substance of the witnesses' statements but preclude providing the defendant with hard copy of the protected reports or witness statements. *Id*. *See e.g.*, Protective Order in recent Latin Kings case, *United States v. Cecchetelli*, Crim. No. 19-10459-RWZ, Dkt. No. 43 (permitting defendant review of protected discovery material in the presence of counsel); Protective Order in recent MS-13 case, *United States v. Recines-Garcia*, Crim. No. 15-10338-FDS (same and providing for electronic review of protected discovery at each institution where a defendant resided).

Not only does the Protective Order here prohibit sharing with the defendants any information in the discovery materials, but it precludes any disclosure whatsoever of the substance of the protected materials outside of defense team members. Paragraph 5, the Witness Interview Bar provides as follows:

> any pretrial documents/disclosures which are marked "ttorneys' Eyes Only – Second Order" shall not be disclosed and/or transmitted in any way (including in writing, electronically or verbally) to any person other than the defense team, unless otherwise ordered by this court. This prohibition includes interviewing and/or communicating with any person outside of the defense team in order to investigate, locate and/or identify the identity of, or information concerning, any individual documented in any documents/disclosures which are marked "Attorneys' Eyes Only – Second Order."

Protective Order at ¶ 5 (parenthesis in original).

The first problem with this provision is that it all but precludes defense team members from investigation into the substance of the protected reports and witness statements. Unlike the protective orders in the Latin Kings and MS-13 cases, *supra*, the Protective Order here precludes defense investigators from going into the field to look for government witnesses by name. No member of the defense team can so much as utter the name of a government witness to anyone. Nor can they make any effort to determine whether a government witness actually said what the discovery material attributes to the witness or, where the witness has made conflicting or inconsistent statements, where the truth lies.

The second problem with the Protective Order is that it inserts the court into defense preparation. Although the Protective Order is temporary and the magistrate judge will hear from defense counsel 14 days after counsel receives the discovery, the court presumably will retain some control over determining how counsel can use the protected discovery. The court could decide that the trial is far enough in the future that the Witness Interview Bar can remain in place for months. The government already has made that argument. The court also could decide that a defendant must make a showing before the court permits efforts to locate or interview witnesses.

For the reasons set forth below, such intrusion by the court in the preparation of a defense is unconstitutional, unnecessary, and unworkable.

**Argument**

1.  **The Witness Interview Bar Unconstitutionally Intrudes Into the Preparation Of A Defense, Is Unwarranted, and Unworkable**

The duty to investigate is a fundamental component of adequate and constitutionally effective assistance of counsel. See *Wiggins v. Smith*, 123 S. Ct. 2527 (2003) (failure to

adequately investigate mitigation factors constituted ineffective assistance of counsel). *See also Commonwealth v. Epps*, 474 Mass. 743, 758 (2016) ("Defense counsel has a professional obligation to investigate all potentially substantial defenses.").

The government's efforts here to screen off all civilian witnesses from defense investigation, even temporarily, effectively makes the witnesses part of the government's team and violates defendants rights to due process and effective assistance of counsel. *United States v. Bryant*, 655 F.3d 232, 238 (3d Cir. 2011) ("[i]f the prosecution impermissibly interferes with the defense's access to a witness during a criminal trial, that conduct violates due process insofar as it undermines the fundamental fairness of the proceeding").

Witnesses generally "'belong' neither to the defense nor to the prosecution, both must have equal access to witnesses before trial." *Id*. (citation omitted). *See also Kines v. Butterworth*, 669 F.2d 6, 9 (1st Cir. 1981) ("[t]he equal right of the prosecution and the defense in criminal proceedings to interview witnesses before trial is clearly recognized by the courts"); *U.S. v. Arboleda*, 929 F.2d 858, 868 (1st Cir. 1991) (same); *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) (a criminal trial "is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined").

For those reasons, government interference with a defendant's right to equal access to witnesses, which the court has adopted and ordered here, can be justified "only by the clearest and most compelling considerations." *Kines*, 669 F.2d at 9 (citation omitted) (collecting cases) ("when the free choice of a potential witness to talk to defense counsel is constrained by the prosecution without justification, this constitutes improper interference with a defendant's right

of access to the witness."). *See also Gregory*, 369 F.2d at 188 ("A related development in the criminal law is the requirement that the prosecution not frustrate the defense in the preparation of its case").

The far-reaching interference that the Witness Interview Bar wreaks here is by no means justified by the clearest and most compelling considerations. The government has alleged that certain of the defendants have engaged in witness intimidation, specifically that: one defendant had a photograph on a phone of a Boston Police Department report containing a witness statement; defendants have discussed in recorded jail calls individuals believed to be cooperating; two defendants intimidated an alleged robbery victim and recorded it; other defendants talked on recorded calls about the recording; several defendants allegedly recorded a rap video containing the recording; other defendants talked on recorded calls about that video; and one defendant allegedly recorded a rap video about the charges in this case that contained a warning about sticking to the "G Code." *See* Government's Memorandum Regarding Declination To Produce Witness Information At This Time (the "Declination"), Dkt. No. 203. Without minimizing the government's concern or the potential impact of this conduct, if proved, it is no different from intimidating conduct alleged in two other large RICO cases with charges spanning the spectrum of alleged violence from assaults and beatings to premeditated, vicious murders. The government's motion for a protective order in the recent Latin Kings case alleged that the defendants had collected and reviewed "'paperwork' concerning witnesses" and cooperators, had made "recordings" of discovery materials to identify cooperators, had "engaged in violence, intimidation and harassment of victims, witnesses and cooperators," and that such "violence, intimidation and harassment is believed to have already been undertaken … against multiple victims, witnesses and cooperators in relation to the racketeering conspiracy charged in

7

this case." *See Cecchetelli*, Crim. No. 19-cr-10459-RWZ, Government's Motion For Protective Order, Dkt. No. 359 at ¶¶ 7-8.

The government's allegations underpinning its request for a protective order in the recent MS-13 case include that "MS-13 is also renowned for investigating and killing, or attempting to kill, those believed to be cooperating with law enforcement." *See Id.* Dkt. No. 138-1, Affidavit of Special Agent Jeffrey T. Wood at ¶ 44. The government described "[p]erhaps the most infamous historical example of MS-13's brutality toward suspected cooperators" as the killing of a young woman who was four months pregnant "when MS-13 members lured her into the woods and left her mutilated body on a river bank." *Id* at ¶ 50. Another example of "MS-13's treatment of suspected cooperators" was the killing of "a sixteen-year-old who was suspected of providing information to Salvadoran authorities." He was led to a forest area where he was killed with a bat and a machete. *Id*. at ¶ 51.

Even though the government had evidence that cooperating witnesses were getting killed by the gangs targeted in each of those cases, it sought only to prevent the defendants from possessing hard copy of discovery that contained witness names and statements. The protective order in each case expressly provided that the defendants could review hard copy discovery naming witnesses and containing witness statements in the presence of counsel, and could review electronic discovery containing the same information on jail computers. *See Ceccchetelli* and *Recines-Garcia*, cases, *supra*.

The government has made no additional showing here that the extra step of delaying, hampering, and potentially precluding normal, routine investigation in this case is warranted. Indeed, defense counsels' agreement not to provide defendants with a hard copy of "Attorneys' Eyes Only" discovery, the identities of the witnesses, or what the witnesses have said, is

sufficient to prevent all of the alleged intimidating acts the government identified in its Declination. Even that provision goes beyond the protections the government had sought in the Latin Kings and MS-13 cases.

To the extent the government should argue that the Witness Interview Bar is nothing more than a delay, that should not persuade the court to keep it in place. First, that argument actually undercuts the government's expressed safety concerns. Witnesses would face the same purported danger if investigators went into the field six months from now. Second, any delay is unacceptable. The charged racketeering acts reach back five years. The case is at least a year away from trial. Memories fade with the passage of time. Witnesses relocate or become unavailable for other reasons. Evidence that is available now may not be later.

The Supreme Judicial Court has recognized that interviewing witnesses is among the "myriad responsibilities that counsel may be required to undertake that must be completed *long before trial* if the defendant is to benefit meaningfully" from the right to counsel. *Lavallee v. Justices in Hampden*, 442 Mass. 228, 235 (2004) (emphasis supplied). Those duties include "interviewing the defendant and witnesses while events are fresh in their memories, preserving physical evidence that may be important to the defense, and locating potential defense witnesses. The effects of the passage of time on memory or the preservation of physical evidence are so familiar that the importance of prompt pretrial preparation cannot be overstated." *Id*.

The court in *Gregory* best articulated the reasons for restraint in restricting a defendant's ability to locate and interview witnesses in a criminal case. Every step the

government proposes should be absolutely necessary and tailored to the particular circumstances of the case:

> Tampering with witnesses and subornation of perjury are real dangers … But there are ways to avert this danger without denying defense counsel access to eye witnesses to the events in suit unless the prosecutor is present to monitor the interview. We cannot indulge the assumption that this tactic on the part of the prosecution is necessary. Defense counsel are officers of the court. And defense counsel are not exempted from prosecution under the statutes denouncing the crimes of obstruction of justice and subornation of perjury.

*Gregory*, 369 F.2d at 188 (reversing denial of motion for new trial where prosecutor advised witnesses not to meet with defense counsel unless prosecutor was present).

Finally, the court should set aside the Witness Interview Bar because it is unworkable. Defense investigators already are active in the field and may even be appropriately interviewing witnesses that likely will be named in the Attorneys' Eyes Only discovery that has not yet been produced. In some cases, the defendants may have given their counsel witness names. In other cases, counsel may have learned the names from discovery produced in related cases pending in the courts of the Commonwealth. The ability of the defense to locate and interview witnesses it learned about independently from Protective Order discovery the government has yet to produce should not be constrained once those witnesses are named in that discovery. Otherwise the defense may be compelled to forego interviewing those witnesses to avoid accusations that to do so is a violation of the Protective Order.

For all of these reasons, the court should consider and decide this motion on an expedited basis, set aside paragraph 5 of the Protective Order, and endorse the remainder of it.

By the attorneys for the following defendants,

For Joshua Teixeira (1):

/s/ Peter Parker
E. Peter Parker, Esq.
Law Office of E. Peter Parker
The Wheelhouse at Bradford Mill
33 Bradford St
Concord, MA 01742

For Joseph Gomes (2):

/s/ Victoria Kelleher
Victoria R. Kelleher, Esq.
One Marina Park Drive, Suite 1410
Boston, MA 02210

For Wilson Goncalves-Mendes (3):

/s/ David Grimaldi
David J. Grimaldi, Esq.
David J. Grimaldi, P.C.
929 Massachusetts Avenue, Suite 200
Cambridge, MA 02139

For Samael Mathieu (4):

/s/ Bryan Owens
Bryan P. Owens, Esq.
Owens Criminal Defense
100 State Street, 9th Flr.
Boston, MA 02109

For Damian Cortez (5):

/s/ Henry Fasoldt
Henry Fasoldt, Esq.
C. Henry Fasoldt, Attorney at Law
185 Devonshire Street, Suite 302
Boston, MA 02110

For Kelvin Barros (7):

/s/ Kevin Reddington
Kevin J. Reddington, Esq.
Law Offices of Kevin J. Reddington
1342 Belmont Street, Suite 203
Brockton, MA 02301

For Ricky Pina (8):

/s/ Derege Demissie
Derege B. Demissie, Esq.
Demissie & Church
929 Massachusetts Avenue, Suite 101
Cambridge, MA 02139

For David Rodriguez (9):

/s/ George Vien
George W. Vien, Esq.
Joshua Ruby, Esq.
Donnelly, Conroy & Gelhaar, LLP
Franklin Street, 1600
Boston, MA 02110

For Darius Bass (10):

/s/ Joan Fund
Joan M. Fund, Esq.
245 First Street,
Riverview II Suite 1800
Cambridge, MA 02142

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 18, 2021.

.

/s/ *E. Peter Parker*
E. Peter Parker