UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-cr-10197-LTS-5 |
| | ) | |
| DAMIAN CORTEZ, | ) | |
|     Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER OF DETENTION**

The United States, by its undersigned attorneys, hereby submits this opposition to the defendant, Damian Cortez ("Cortez" or the "defendant")'s Motion for Reconsideration of Order of Detention (the "Motion"). Dkt. 342. After being ordered detained based on Magistrate Judge Kelley's findings made just eight months ago, first, by clear and convincing evidence that no conditions will reasonably assure the safety of any other person and the community, and second, by a preponderance of the evidence that no conditions will reasonably assure the defendant's appearance as required, the defendant now seeks release based primarily on the agreement of his mother, to whose residence the Court already denied releasing the defendant even on strict restrictions, to sign a secured bond.

The defendant, an NOB gang member/associate with numerous drug and assault charges on his criminal record, now charged with serious crimes for which he faces a significant amount of time – possession with intent to distribute over 400 grams of fentanyl (which carries a 10-year mandatory minimum sentence) and violation of the Mann Act for sex trafficking – fails to present information material to the issue of detention that was unknown to him at the time of his original detention hearing that merits reopening his detention proceedings as required by 18 U.S.C.

1

§ 3142(f)(2).   The factors set forth in 18 U.S.C. § 3142(g) continue to weigh heavily in favor of detention.   For reasons including those discussed in greater detail below, this Court should deny the Motion without a hearing.

I.       UNDERLINE BACKGROUND

In connection with a 2019 investigation of the Boston-based NOB street gang, whose members and associates are alleged to have, including through a racketeering conspiracy, engaged in a range of violent and dangerous criminal activity including murders, attempted murders, armed robberies, drug trafficking, sex trafficking, and illegal firearms crimes, on June 16, 2020, the defendant was charged by complaint with one count of crossing state lines for the purposes of prostitution, in violation of the Mann Act, 18 U.S.C. § 2421, and one count of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1). Dkt. 1.   On July 27, 2020, the Court so-ordered the defendant's stipulation to a voluntary order of detention.   Dkts. 88, 93.

On September 16, 2020, a grand jury in this district returned an indictment charging the defendant with possession with intent to distribute 400 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi) (Count Three) and transporting an individual across state lines for the purposes of prostitution and sexual activity, in violation of the Mann Act, 18 U.S.C. § 2421 (Count Seven).   Dkt. 115.   On October 14, 2020, a superseding indictment charged the defendant with the same.   Dkt. 145.

In January 2021, the defendant moved for release, and the Court held a detention hearing on February 4, 2021.   Dkt. 208.   The Court denied the defendant's motion and issued an order of detention, attached hereto as Exhibit 1 (the "Order" or "Order of Detention").   Dkt. 209.

The Order noted the applicable rebuttable presumption of detention pursuant to 18 U.S.C. §
3142(e)(3) and held that detention was warranted despite that the defendant presented evidence
sufficient to rebut the presumption, concluding that the government had proven by clear and
convincing evidence that no conditions of release will reasonably assure the safety of any other
person and the community, and by a preponderance of the evidence that no conditions will
reasonably assure the defendant's appearance as required.   *Id.*

Now, eight months after the Court's Order of Detention, the defendant filed the instant
Motion, claiming that his mother's offer to sign a secured bond warrants his release.   Motion at
5.   Trial is set for July 18, 2022.   Dkt. 343.

II.   LEGAL STANDARD

A defendant must be detained pending trial if the Court determines that no condition or
combination of conditions "will reasonably assure the appearance of the person as required and
the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).   Where, as here, the
defendant is charged with an offense under the Controlled Substances Act punishable by ten or
more years' imprisonment, a presumption arises under 18 U.S.C. § 3142(e) that no condition or
combination of conditions will reasonably assure the safety of the community.   *See United
States v. Perez-Franco*, 839 F.2d 867, 869-70 (1st Cir. 1988).   Once that presumption attaches,
the defendant bears the burden to produce "some evidence" to rebut it.   *United States v. Dillon*,
938 F.2d 1412, 1416 (1st Cir. 1991) (citing *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.
1985)).   Even if a defendant presents such evidence, however, "the rebutted presumption retains
evidentiary weight."   *Dillon*, 938 F.2d at 1416.

In evaluating detention, courts must consider the factors set forth in 18 U.S.C. § 3142(g),

which include the nature and circumstances of the offense charged, the weight of the evidence, the defendant's history and characteristics, and the nature and seriousness of the danger posed by release.

Reconsideration of a defendant's detention order may be granted only on a finding "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).

III.     ARGUMENT

    a.     The Defendant Has Not Identified New Information Material to Detention Warranting Release, and His Proposed Release Would Not Mitigate His Risk of Danger To The Community Nor His Risk of Flight

The defendant has failed to present any new information that has a material bearing on the issue of detention, as required by 18 U.S.C. § 3142(f)(2).  The single piece of new information now identified by the defendant – his mother's offer to post a secured bond – does not constitute such requisite information.  As such, the Court should not reconsider detention pursuant to 18 U.S.C. § 3142(f)(2), and release is unwarranted thereon.   Regardless, the factors set forth in 18 U.S.C. § 3142(g) support a finding that detention is appropriate now, just as the Court held it was eight months ago.   The defendant remains a serious danger to the community and a flight risk, and no conditions will reasonably assure the safety of any other person and the community or his appearance as required.

The Court cited numerous reasons supporting its earlier determination to detain the

defendant: (1) the strong weight of the evidence; (2) the lengthy period of incarceration he faces if convicted; (3) his prior criminal history; (4) his participation in criminal activity while on probation, parole, or supervision; and (5) his history of violence or use of weapons, or supervised release.  Order at 2.  The Court specifically cited the "several serious charges on his criminal record, including trafficking heroin, assault with a dangerous weapon, a motor vehicle, and violation of a domestic abuse order," a well as two then-pending state cases involving "violent behavior" and assault on family members.  *Id.* at 3.  Further, the Order noted the defendant's lack of employment since September 2019 and his "history of heavy gambling," and questioned "how he financed his gambling habit while not holding a job since 2019."  *Id.*  Relatedly, the Court described the defendant's "extensive" domestic and international travel, "trips financed apparently while he was unemployed."  *Id.*  The Court further emphasized that the defendant now faces "extremely serious charges," including "violent" Mann Act allegations, and a "substantial sentence," including the fentanyl possession charge's 10-year minimum mandatory sentence.  *Id.*  The Court determined that the government met its burden on establishing dangerousness and risk of flight, and that "there are no conditions that would reasonably assure Mr. Cortez's return to the court or the safety of the community."  *Id.*

The information now offered by the defendant – that he will live with his mother at 211 North Street, Randolph, MA, who will act as a third-party custodian and sign a secured bond, Motion at 5, does not alter the facts cited and relied upon by the Court in determining that detention is warranted, does not otherwise materially bear on the issue of detention, and does not negate the danger or flight risk posed by the defendant.

As an initial matter, the Court has already explicitly considered and rejected the

defendant's proposed residence of his mother's house and his proposed restrictions of his mother acting as third-party custodian and conditions including curfews, electronic or GPS monitoring, and home detention.   *See* Detention Hearing Transcript ("Tr.") at 11:18–24, 21:20–22:16; Order at 3 (denying release).   The Motion's proposed residence and restrictive conditions remain insufficient to overcome the defendant's dangerousness and risk of flight, just as they were eight months ago, and his mother's offer to post a secured bond is inadequate to mitigate those risks.

The support of his family did not deter the defendant from engaging in drug trafficking activities before – including *at his mother's house*, *the same one to which he again seeks to be released* – and nothing indicates it will do so now.   To the contrary, the defendant could easily continue to be involved with drugs at his mother's residence, just as the evidence indicates he previously did.   *See* Tr. at 6:9–19, 20:16–23, 22:2–4.   Specifically, as detailed at the detention hearing, during the June 16, 2020 search of a location associated with the defendant pursuant to a federal warrant, not only did investigators recover the defendant's personal documents, over 400 grams of fentanyl (some of which was pressed into pills consistent in appearance with pills actively being distributed by the NOB gang (blue pills designed to appear as pharmaceutical-grade Oxycodone)), a commercial pill press, multiple digital scales, rap lyrics identifying the defendant and NOB as operating together, and plastic baggies, consistent with drug distribution, but investigators also recovered dyes in mailing packages for the commercial pill press, with a mailing address of 211 North Street, Randolph, MA.   *Id.* at 5:15–6:19. In other words, evidence indicates that the defendant was sending pill press dyes for manufacturing fentanyl pills to his mother's residence – the same location to which he proposes being released now.   *See id.*; Motion at 5.

Moreover, as the Court previously stated, a bracelet does not "really guard[] against flight,"

as a defendant can simply "cut [it] off and walk away." Tr. at 23:8–9. The defendant traveled extensively internationally for several years before his arrest and lived in Cape Verde, and faces a significant amount of time if convicted. *See id.* at 22:9–16. The possession with intent to distribute over 400 grams of fentanyl charge alone carries a ***10-year mandatory minimum sentence***. While it appears that despite his extensive criminal record reflecting "several serious charges" including trafficking heroin and assaults including with a dangerous weapon and on family members, Order at 3, the defendant might be eligible for a "safety valve" pursuant to 18 U.S.C. § 3553(f), *see* Tr. at 8:4–9:4, 16:10–11, he has at no point indicated any intent to satisfy the requirements thereof. Regardless, even assuming *arguendo* that he did so pursuant to U.S.S.G. § 5C1.2 and receives a 2-point decrease therefor, and accepts responsibility pursuant to U.S.S.G. § 3E1.1 and receives a 3-point decrease therefor, his preliminary estimated guidelines are still extremely high. His initial Offense Level is estimated to be at least 30 based on the alleged drug weight pursuant to U.S.S.G. § 2D1.1(c)(5), and certain specific offense characteristics would increase his Offense Level to at least 36.[1] *See, e.g.*, U.S.S.G. § 2D1.1(b)(12) (providing for a 2-level increase for maintaining a premises for the purposes of manufacturing or distributing a controlled substance); U.S.S.G. § 2D1.1(b)(13) (providing for a 4-level increase for knowingly misrepresenting or marketing as another substance a mixture or substance containing fentanyl). Even taking into account the 5-level decrease for safety valve and acceptance and assuming a Criminal History Category I, the defendant faces ***108-135 months***. This is a significant amount of time that provides ample reason to flee, and detention is warranted thereon.

---

1 The defendant's guidelines will likely be dictated by the drug charge, however, the Mann Act charge could result in a variance.

Further, just as he did eight months ago, the defendant poses an extremely high risk of danger to the community that also warrants detention.   In addition to the numerous violent crimes with which the defendant was previously charged in the state, both crimes with which he is now federally charged are dangerous ones, and the evidence as to each is strong.   As the Court is well aware, fentanyl is extremely dangerous, highly addictive, and poses an enormous risk to the community.   Moreover, there an *additional* danger here because the pills the defendant possessed with intent to distribute were designed to appear consistent with pharmaceutical-grade Oxycodone. An unsuspecting consumer would have no reason to think they might contain fentanyl.   Further, the evidence shows that the defendant is associated with the violent NOB street gang, including that the pills are consistent with fentanyl pills being distributed by NOB, and rap lyrics found at the location associated with the defendant identify the defendant and NOB as operating together. Additionally, evidence seized at the location associated with the defendant indicates this was not just a one-time operation: the large quantity of powder and pressed fentanyl seized (over 400 grams), the commercial pill press, the dyes for the pill press, and multiple digital scales are all indicative of involvement in a long-term drug operation.   As to the sex trafficking, as the Court is already aware, the victim told officers that she was working for "Damian" (the defendant's first name), that he had threatened to kill her if she did not engage in prostitution activities, and that he had coerced her into sex trafficking by abusing her drug addiction.   Moreover, papers have been seized in which the defendant has admitted or written in rap lyrics to being actively involved in prostitution and has referred to his activities with women as "sex slaving."   The defendant's serious risk of danger supports detention.

b. <u>No Hearing Is Necessary</u>

"[E]videntiary hearings on motions are the exception, not the rule." *United States v. McGill*, 11 F.3d 223, (1st Cir. 1993) ("We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion."); *see also United States v. Panitz*, 907 F.2d 1267, 1273 (1st Cir. 1990) ("[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion."). The Court should not convene a hearing because the facts alleged by the defendant do not support his claim for relief. *See United States v. Staula*, 80 F.3d 596 (1st Cir. 1995) ("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record."). As a result, the defendant has not established any right to an evidentiary hearing on his motion.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the government respectfully requests that the Court deny the Motion without a hearing.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   /s/ Sarah B. Hoefle
MICHAEL J. CROWLEY
SARAH B. HOEFLE
Assistant U.S. Attorneys

Dated: December 21, 2021

9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


<u>/s/ Sarah B. Hoefle</u>
SARAH B. HOEFLE
Assistant United States Attorney

Dated: December 21, 2021