DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action 20-cr-10197-LTS |
| | ) |
| | ) |
| DARIUS BASS | ) |
|     Defendant | ) |

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
WITH MEMORANDUM INCLUDED HEREIN**

    The defendant, Darius Bass, respectfully moves the Court to suppress all evidence obtained, directly or derivatively, from the seizure of the 2014 Chevy Malibu bearing MA registration 4TZ225.

    In the alternative, the defendant respectfully moves the Court to suppress all evidence obtained, directly or derivatively, from the execution of a search warrant of the 2014 Chevy Malibu bearing MA registration 4TZ225.

    The defendant further moves to suppress all evidence obtained, directly or derivatively, from the execution of a search warrant authorizing the collection of information of T-Mobile mobile phone assigned the telephone number 857-488-2114.

    All such evidence must be suppressed because it was obtained in violation of the defendant's rights under the Fourth Amendment to Constitution of the United States.

    Specifically, the seizure and the warrant applications[1] did not demonstrate probable cause to believe that evidence of crimes, firearms violations, and the target phone has been used, is being used, and will continue to be used to facilitate the commission of a crime. Furthermore, the good faith exception does not apply.

---

[1] Quincy District Court state warrants 17SW005 and 17SW008

1

As grounds therefore the defendant submits the following:

**FACTS**

The defendant seeks to suppress three searches, to wit: the warrantless taking and seizure of the Chevy Malibu to the Randolph Police Department; the search pursuant to the warrant of the Chevy Malibu and the search of the iPhone 857-488-2114.

The defendant incorporates by reference the facts contained in its memorandum in support of its motion to suppress statements. See Document #364. It should be noted that the facts as stated in Document #364 incorporate the findings of the Superior Court Judge in its decision of the motion to suppress[2] and the facts taken from the Randolph Police officers present on the scene.

Briefly stated, on January 1, 2017, at about 9:20 p.m., police responded to a shooting at 9-11 Howe Circle in Randolph. No suspects were identified but noticed was a dark colored Toyota or Nissan seen fleeing the scene.

The next day on January 2, 2017, dispatch received a 911 call that someone had seen two males, one of which hopped a fence and the other that stood near the fence. Neither was doing anything criminal and neither had weapons or anything in their hands. The caller stated that the men were wearing black clothing and that he believed had gotten out of a car parked in the lot that adjoined the field. He provided the license plate number of that car. The vehicle is the subject of this motion.

Both Marco Silveira and Darius Bass were stopped, detained and questioned by the police. Although both were released, the police did not release the Chevy Malibu. It was towed to Randolph. Thereafter a search warrant was obtained. Seen inside the vehicle was the license

---

[2] Darius Bass and Marcos Silveira were indicted on firearm charges as a result of the search, see Norfolk Superior Court Docket Nos. 1782CR108 and 1782CR107.

of Marco Silveira and the cell phone of Darius Bass.

Darius Bass denied knowledge of the vehicle.

**Standing as it Relates to the Seizure of the Chevy Malibu**

The defendant submits that he has standing to challenge all three searches.

It is understood that the Courts have held that "[t]he Fourth Amendment's protection against unreasonable searches may only be claimed where a defendant demonstrates that he or she personally has a reasonable expectation of privacy in the place searched. See Rakas, 439 U.S. at 143–44 n. 12, 99 S.Ct. 421. As a general proposition, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his [or her] Fourth Amendment rights infringed." Id. at 134, 99 S.Ct. 421. In the context of a vehicle search, a passenger who has "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized," has made no showing that he or she has a legitimate expectation of privacy in, for example, the area under the seat of the car in which he or she was "merely [a] passenger [ ]." Id. at 148, 99 S.Ct. 421. Under such circumstances, a vehicle search does not infringe upon the passenger's Fourth Amendment rights. Thus, the passenger lacks standing to challenge the search. United States v. Symonevich, 688 F.3d 12, 19 (1st Cir. 2012).

The defendant submits that the issue of standing is not so easily resolved in the case at bar.

The following issues contravene the doctrine of standing as expressed in U.S. v. Symonevich.

**Standing – Illegality of Stop of Bass**

First, the defendant submits the Government should not benefit from the illegal seizure

3

and questioning of the defendant, to wit: its fruits should be suppressed.  See United States v. Starks, 769 F.3d 83 (1st Cir. 2014).

Applying the analysis of Brendlin v. California, 551 U.S. 249 (2007) to the facts in the case at bar, "[w]hen a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment. The question in this case is whether the same is true of a passenger. We hold that a passenger is seized as well and so may challenge the constitutionality of the stop." Brendlin v. California, supra at 251.

"In Brendlin, the Supreme Court determined that a passenger traveling in a car is seized along with the driver, and therefore has standing to challenge the constitutionality of the stop." Id.

In the instant case, both Silveira and Bass were unlawfully seized, the officers' action by show of authority, restrained each of their freedom of movement through means intentionally applied. See Florida v. Bostick, 501 U.S. 429, 434 (1991).

In the case at bar, albeit it was not a motor vehicle stop, a similar analysis should be undertaken.  The vehicle was seized as a result of the illegal detention of both Silveira and Bass. Assuming *arguendo* that Bass is the passenger, he was subject to the same authority as the driver of the car "thus are all seized for Fourth Amendment purposes." See Whren v. United States, 517 U.S. 806, 808-10, (1996) (all occupants of a vehicle are subjected to a seizure within the scope of the Fourth Amendment when an officer conducts an investigatory stop). United States v. Orth, 873 F.3d 349, 356 (1st Cir. 2017).

Unlike in US v. Orth, supra, the defendant submits the police did not have evidence of criminal activity.  Although Bass and Silveira were not stopped inside the vehicle, illegally, they each were stopped

4

If the stop of Bass and Silveira was illegal, then the defendant submits the seizure of the vehicle was the fruit of the poisonous tree.

Weeks v. United States, 232 U.S. 383 (1914) held evidence seized during an unlawful search cannot constitute proof against the victim of the search.

> ..[T]he more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959).

Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The defendant submits that evidence obtained from the statements of Bass and Silveira including the search of Silveria, that lead to the seizure and ultimate search of the Chevy Malibu[3] are the "fruits of the poisonous tree" pursuant to the case of Wong Sun v. United States, 371 U.S. 471, 481-488, 83 S.Ct. 407 (1963). "Under Wong Sun, evidence that is seized as the result of police exploitation of a constitutional illegality will be suppressed." In the instant case, the defendant's seizure by the law enforcement was the "primary illegality". United States v. Jones, 261 F.Supp.2d 40, 44 (D. Mass. 2003).

"Evidence that would not have been obtained but for the unlawful search must be excluded as fruit of the poisonous tree." United States v. Sugar, 322 F.Supp.2d 85, 92 (D. Mass. 2004) cites omitted.

The exceptions to this rule are independent source and inevitable discovery that remove the taint of the illegality but the defendant submits no such factors exist. Nix v. Williams, 467 U.S. 431, 443-444 (1984).

The defendant submits that the evidence derived from the statements of Bass and the

---

[3] A motion to suppress the statements of Darius Bass was filed. See Document #360. The argument of fruit of the poisonous tree is contained therein as well as the instant motion.

5

seizure of Bass and Silveira should be suppressed.  The Government cannot dissipate the taint of the unlawful conduct.  Id.

**No Abandonment**

Mr. Bass did not acknowledge or admit to being a passenger in Silveira's vehicle.   Bass did not state his cell phone was inside the vehicle.  The Government will argue that the property was abandoned.

Implicit in the concept of abandonment is a renunciation of any "reasonable" expectation of privacy in the property abandoned. The contrary suggestion strikes us as anomalous. See United States v. Dzialak, 441 F.2d 212, 215 (2d Cir.), cert. denied, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971); United States v. Stroble, 431 F.2d 1273, 1276 (6th Cir. 1970); United States v. Minker, 312 F.2d 632, 634-635 (3d Cir. 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). United States v. Mustone, 469 F.2d 970, 972-3 (1st Cir. 1972).

In contravention of the failure of Bass to acknowledge he was a passenger in the vehicle and his cell phone was contained therein is the illegality of the stop.  See argument *supra*.

The defendant further asserts that he did nothing more than protect his private property from inspection.  In Smith v. Ohio, 494 U.S. 541, 543(1990) "a citizen who attempts to protect his private property from inspection" has not abandoned his property. In Smith, the suspect was thrown up against the car and threw his property which contents contained therein resulted in his arrest.

In the instant case, Bass' failure to acknowledge and his disavowing of knowledge of the vehicle, the contents therein to include the cell phone et al was caused by the seizure of his person.  Contrast U.S. v. Sealey, 30 F.3d 7, 8 (1st Cir. 1994) where the court found that discarding property while running from the officer's statement, "what's up" was not sufficient.

In the case at bar, Bass was restrained and in handcuffs, not given Miranda warnings when his statements were made.

Also see U.S. v. Lewis, 40 F.3d 1325 (1st Cir. 1994) in which the property seized was abandoned prior to the show of authority of the police.  Unlike in the facts in this case, no abandonment occurred until after the show of authority.

But a further analysis must be done.  Ownership of a cell phone is different than a failure to acknowledge that he was a passenger in a vehicle. The question is whether Bass abandoned the cell phone inside the vehicle.  And further, if the cellphone was abandoned, did Mr. Bass abandon the content therein held by a third party.  Lastly, did the police have probable cause to seize the content of the cell phone with a warrant.  This argument will be addressed further later in the memorandum.

**Warrantless Seizure of Vehicle**

Warrantless searches are presumptively illegal, Katz v. United States, 389 U.S. 347 (1967), and warrantless searches and seizures violate the Fourth Amendment, absent consent or exigent circumstances. Griffin v. Wisconsin, 483 U.S. 868, 883 (1987) (Blackmun, dissenting). The government bears the burden of proving an exception to the warrant requirement. Payton v.New York, 445 U.S. 573 (1980).

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This protection applies when "the person invoking its protection can claim a ... 'legitimate expectation of privacy' that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).  United States v. Powell, 925 F.3d 1, 5 (1st Cir. 2018).

The Supreme Court has also held that there is an "exigency" in the context of automobile detention that arises because of the automobile's inherently mobile nature," Carroll v. United States , 267 U.S. 132, 154 (1925) and that people have a "lesser expectation of privacy" in automobiles because of their use "as a readily mobile vehicle." California v. Carney , 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

The potential mobility of an automobile is sufficient for law enforcement officers to seize it without a warrant. Id.  Notwithstanding, to justify the warrantless seizure, probable cause that the vehicle contained evidence of a crime when it was seized.   The defendant submits no such showing was made.  California v. Acevedo, 500 U.S. 565, 569 (1991).

In the case at bar, no probable cause that evidence of a crime was contained in the vehicle.

**Search Warrant for Vehicle and Phone**

Following the seizure of the vehicle the police obtained a search warrant for the vehicle to seek any firearms, ammunition and firearm accessories including but not limited to magazines, holsters, gun boxes, ammunition boxes, receipts and paperwork involving firearms, ammunition and gun cleaning accessories.  Also, any gun shot residue or evidence that a firearm was within the motor vehicle.

Notable in the application for the search warrant is the absence of seeking the iPhone that the police submitted was visible.  The list of the return of the search warrant[4] included two firearms, bullets, large capacity magazine, two MA driver's license of Marco Silveira, purple phone case and set of keys.  Again, no iPhone belonging to Bass is listed.[5]

---

[4] See Warrant and Return of Warrant Quincy District Court 17SW005.
[5] This argument will be addressed below regarding suppression of the cell phone.

8

A search warrant was also drafted for the iPhone found in the vehicle, to wit: 857 488 2114 which belonged to Mr. Bass.  Requested was not only subscriber information but log files, text messaging files, images, data, phone/address book and phone call records that are stored on the cell phones internal or attached external storage devices and records for these phone numbers saved in t-Mobile's databases.  Also requesting precision location information of the mobile (FPS) and tower information from January 01, 2017 through and including January 05, 2017.

The affiant of the search warrants is Detective Michael Tuitt.  He outlines in the affidavit his experience in ¶1 followed by the investigation into the shots fired in the area of 9-11 Howe Circle in Randolph. ¶2-7.  Paragraph 8 is notable in it names Danilo Depina and 11 Howe Street as known to Boston and Brockton PD for criminal activity.  Thereafter the affiant describes the encounter of the police with Bass and Silveira, ¶9-15.  The affiant then includes information he learned after the seizure of the vehicle in ¶16 and 17.  Lastly he lists what he is seeking in ¶18-20.  The only cell phone listed is the iPhone recovered from 14 Howe Circle on January 1, 2017.

**<u>No Probable Cause</u>**

It is true, of course, that an affidavit submitted in support of a warrant application must demonstrate probable cause "in some trustworthy fashion." <u>United States v. Nocella</u>, 849 F.2d 33, 39 (1st Cir. 1988) (quoting <u>United States v. Aguirre</u>, 839 F.2d 854, 857 (1st Cir. 1988) <u>United States v. Floyd</u>, 740 F.3d 22, 35 (1st Cir. 2014).

"The standard we apply in determining the sufficiency of an affidavit" supporting a state or federal warrant "is whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search either the premises or the person." <u>United States v. Khounsavanh</u>, 113 F.3d 279, 283 (1st Cir. 1997) (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). "Probable cause does not require either certainty or an

9

unusually high degree of assurance. All that is needed is a 'reasonable likelihood' that incriminating evidence will turn up during a proposed search." United States v. Clark, 685 F.3d 72, 76 (1st Cir. 2012) (citation omitted) (quoting Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003) ).  U.S. v. Morel, 922 F.3d 1, 11 (1st Cir. 2019).

"[A] probable cause determination is fundamentally a fact-specific inquiry. No one factor possesses talismanic powers. Because of the importance of Fourth Amendment freedoms to every American, and because of the fact specific nature of the probable cause inquiry,..." there is no pro se finding of what establishes probable cause.  U.S. v. Khounsavanh, 113 F.3d 279, 286 (1st Cir. 1997).

If the Court were to analyze the affidavit, the search warrant affidavit did not contain facts sufficient to meet the requisite probable cause standard.

The requirement of a search warrant must satisfy the Fourth Amendment of the Constitution.

The "warrant application must demonstrate probable cause to believe that (1) a crime has been committed-the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched-the so-called 'nexus' element." United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005) (citation omitted).

"Probable cause exists where information in the affidavit reveals "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (internal quotation and citation omitted). "Probability is the touchstone" of this inquiry. Id. (internal quotation and citation omitted)." United States v. Baldyga, 233 F.3d 674, 683 (1st Cir., 2000).

The nexus requirement is satisfied if a person of "reasonable caution [has] reason to

believe that evidence of a crime will be found at the place to be searched." United States v. Rodrigue, 560 F.3d 29, 33 (1st Cir. 2009) (internal quotation marks and citation omitted). United States v. Rosenbeck Criminal No. 09-30042-DJC (D. Mass., 2011).

The defendant submits that no probable cause contained in the affidavit to believe that the vehicle and/or the iPhone found inside the vehicle, to wit: 857 488 2114 demonstrated (1) a crime has been committed-the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched-the so-called 'nexus' element.

**No Particularity to Search Phone**

The fourth amendment requirement that a search warrant "particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).  U.S. v. Hershenow, 680 F.2d 847, 851 (1st Cir. 1982).

Of note, the cell phone iPhone 857-488-2114 was not included.

> The particularity and probable cause requirements of the fourth amendment are thus closely interconnected, as the Supreme Court has recognized in interpreting the pertinent language of the amendment: " 'and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' This prevents the issue of warrants on loose, vague or doubtful bases of fact." Go-Bart Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931). U.S. v. Hershenow, 680 F.2d 847, 851 (1st Cir. 1982).

"The fact that [a warrant] application adequately describe[s] the 'things to be seized' does not save [a] warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." Id. (emphasis omitted)." United States v. Moss, 936 F.3d 52, 59 (1st Cir. 2019).

So to in the case at bar, the search warrant for the Chevy Malibu did not list the iphone

known to belong to Bass and observed in the vehicle.  As such the defendant submits it violated his Fourth Amendment rights.

**Cell Phone Data from T-Mobile**

Additionally the Fourth Amendment protects contents of electronic communications because it " is the technological scion of tangible mail, and it plays an indispensable part in the Information Age." United States v. Warshak, 631 F.3d 266, 286 (6th Cir. 2010). Individuals have a reasonable expectation of privacy in their communications, including in email hosted by third-party providers. Warshak, 631F.3d at 285-86.  T-Mobile is a communication company, the defendant submits, in which he had an expectation of privacy.

An analogy can be made to letters et al, that electronic communication "implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their 'papers[.]'" United States v. Cotterman, 709 F.3d 952, 964 (9th Cir. 2013) (en banc) (citing U.S. Const. amend. IV); Katz v. United States, 389 U.S. 347, 352 (1967); United States v. Jacobsen, 466 U.S. 109, 114 (1984) ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy[.]").

Email and other electronic communications have become so pervasive that many would "consider them to be essential means or necessary instruments for self-expression, even self-identification." City of Ontario v. Quon, 560 U.S. 746, 760 (2010).

In the case at bar, even if this Court were to find that the defendant abandoned the cell phone, the defendant submits that he did not abandon his expectation of privacy in his data held by T-Mobile.

The search of Bass' phone revealed news articles searched regarding the shooting, MapQuest search of 11 Howe Circle, Danilo Depina; GPS position of Bass' cell phone.

The expectation of privacy in electronic communications despite the use of third parties to facilitate it, the defendant submits, is not be lessened.

Merely entrusting communications to an intermediary does not defeat the reasonable expectation that the contents of the communications will remain private. Smith v. Maryland, 442 U.S. 735, 741 (1979).

As in physical mail, even though at any point a mail carrier could open a letter and examine its contents does not lessen the expectation of privacy. Warshak, 631 F.3d at 285. Likewise, since the Supreme Court's ruling in Katz in 1967, it has been "abundantly clear that telephone conversations . . . are fully protected by the Fourth and Fourteenth Amendments"—even though telephone companies have the capacity to monitor, listen in on, and record calls. See Smith, 442 U.S. at 746-47 (Stewart, J., dissenting) (citing Katz, 389 U.S. at 352). As Warshak recognized, third-party Internet service providers are the "functional equivalent" of post offices or phonecompanies; they make "email communication possible. Emails must pass throughan ISP's servers to reach their intended recipient." 631 F.3d at 286. Therefore, as with letters and phone calls, the ability of a third-party service provider to access individuals' emails does not diminish the reasonableness of users' trust in the privacy of their emails. *Id.* at 286-87.

The Fourth Amendment protects possessions stored in rented spaces, and a landlord or hotel employee's ability to enter the space without diminishing a renter's legitimate expectation of privacy. *See* Stoner v. California, 376 U.S. 483, 490 (1964); Chapman v. United States, 365 U.S. 610 (1961); United States v.Owens, 782 F.2d 146, 149 (10th Cir. 1986).

As stated in the concurring opinion of Justice Sotomayer "the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third to parties. This approach is ill-suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks." United States v.

13

...

Jones, 132 S. Ct. 945, 957 (2012) (Sotomayor, J., concurring).

The defendant submits the same analysis should be undertaken regarding the search of the data held by T-Mobile of the defendant's cell phone.

The defendant incorporates by reference the preceding argument that regarding the warrant and its lack of probable cause, supra. Taken in its totality, the defendant submits he had standing and expectation of privacy in the search of his data contained by T-Mobile and the search warrant lacked probable cause in violation of his rights under the Fourth Amendment.

**Summary**

The motion to suppress the search and seizure of the Chevy Malibu was argued in state court. Connor, J. allowed in relevant part the motion to suppress. Three years later the Federal Government seeks to use the same evidence against the defendant.

The defendant understands that the "a state court's determination does not control the admissibility of evidence in federal court: law governs the admissibility of evidence in federal prosecutions.... As a result, [e]vidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings without regard to state law. United States v. Ch arles, 213 F.3d 10, 19 (1st Cir.2000) (citation and internal quotation marks omitted) (alterations in original)  U.S. v. McGauley, 279 F.3d 62, 74 (1st Cir. 2002).

Notwithstanding, in this case, the conduct of the Randolph police violated the defendant's Constitution rights. The Government will rely primarily on the issue of standing and lack of automatic standing that the state of Massachusetts permits. The Government discounts the initial conduct of the Randolph police[6]. The Constitutional violations began on January 2, 2017 in the morning when Bass was standing in a field and Detective Ryan seized, frisked and handcuffed him

---

[6] Defendant incorporates by reference his motion to suppress statement.

without reasonable suspicion and probable cause.  All evidence recovered by the police flowed from there.

The defendant submits an evidentiary hearing is necessary as supported by the facts and argument contained hererin.

**NO GOOD FAITH EXCEPTION APPLIES**

A remedy that excludes impermissibly obtained evidence from use at a criminal trial – the "exclusionary rule" – similarly protects constitutional rights. The exclusionary rule typically applies in cases involving violations by law enforcement of rights guaranteed by the Fourth or Fifth Amendments to the U.S. Constitution.

The Supreme Court has extended the United States v. Leon, 468 U.S. 897 (1984) good-faith exception in relatively minor ways over the past several decades. In a 1995 case, Illinois v. Krull, the Court applied the exception where police officers had searched an auto dealer's list of licenses pursuant to a statute that courts later struck down as unconstitutional.  Several years later, in Arizona v. Evans, the Court applied Leon to evidence obtained after an arrest based on a facially valid warrant that the clerk of the court had neglected to show had been quashed seventeen days earlier. In Hudson v. Michigan, 547 U.S. 586 (2006) the Court declined to find any distinction between police error and third-party errors.

In the case at bar, the defendant seeks an evidentiary hearing to address the assertion that the good faith exception does not apply.  The defendant submits that the Government bears the burden to show the officers acted in good faith.

CONCLUSION

For the foregoing reasons, the defendant prays this Honorable Court will grant an evidentiary hearing and grant the motion.

Respectfully submitted,
DARIUS BASS
By his attorney,

*/s/ Joan M. Fund*
Joan M. Fund, Esq.
Fund & FitzGerald
245 First Street, Suite 1800
Cambridge, MA 02142
(508) 878 6830
(617) 945 9693
joanmfund@gmail.com
BBO#181430

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Joan M. Fund
Joan M. Fund, Esquire

Date: February 5, 2022